VINCENT J. VELARDO (13610)
GREG SODERBERG (14016)
**LITCHFIELD CAVO LLP**
420 E. South Temple, Suite 510
Salt Lake City, Utah 84111
Phone: 801-410-4982
velardo@litchfieldcavo.com
soderberg@litchfieldcavo.com

Attorneys for Defendant The Tor Project, Inc.

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JAMES SEAVER and DEBORAH SEAVER, as parents and heirs of G.S., deceased,<br>    Plaintiffs,<br>v.<br>The ESTATE of ALEXANDRE CAZES, deceased, a citizen of Canada, formerly doing business as ALPHABAY; THE TOR PROJECT, INC. aka THE ONION ROUTER, a Massachusetts non-profit corporation; CHINA POSTAL EXPRESS & LOGISTICS COMPANY aka CHINA POST aka CHINA COURIER SERVICES CORPORATION, a Chinese corporate or governmental entity; and EMS COOPERATIVE dba EXPRESS MAIL SERVICE, a foreign entity,<br>    Defendants. | **THE TOR PROJECT, INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FOR FAILURE TO STATE A CLAIM**<br><br>**[HEARING REQUESTED]**<br><br>Civil Case No: 2:18-cv-00712-DB-DBP<br><br>Honorable Dee Benson<br>Magistrate Judge Dustin Pead |

**Argument**

The Court should dismiss Plaintiffs' claims against The Tor Project, Inc. ("Tor") because this Court lacks personal jurisdiction over Tor, because Tor is immune under the Communications Decency Act ("Section 230"), and because Plaintiffs fail to state a claim against Tor. Tor is a general-purpose tool. It works over a general-purpose set of relays, all of which are operated by others, creating the Tor network. Like many tools, as well as many services such as highways and the U.S. mail, the Tor software and broader Tor network can be used for good purposes as well as illegal ones. Yet the fact that minors in Utah used the Tor network to purchase illegal drugs from a foreign website (then delivered into Utah by the U.S. mail over Utah's highways) does not create liability for the creators of the Tor software.

1. **The Existence of Relays in Utah Does Not Confer General or Specific Jurisdiction.**

Plaintiffs' assertion that Tor is subject to personal jurisdiction in Utah because other people run Tor network relays that are located in Utah is insufficient to confer general or specific personal jurisdiction over Tor in Utah. First, the existence of such network relays, even if true, does not render Tor "at home" in Utah such that Tor is subject to general jurisdiction in Utah. *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014). The relays are not owned by Tor; they are not

housed in offices owned or leased by Tor. They are not operated by Tor employees. Instead, any Tor relays that exist in Utah consist of computers or servers owned by others and operated by others (and as Plaintiffs point out, their owners' legal responsibility, Opp. at 6). Tor has no control over them and they could be turned off or on at any time.

Nor can general jurisdiction over Tor in Utah be established based upon the observation that many people in the U.S. choose to use Tor, Opp. at 10, or that the general national numbers somehow "suggest" that Utahns use Tor a certain amount each day, Opp. at 6. Both Utah, and the due process clause, require significantly more to establish general jurisdiction.

Additionally, Tor lacks sufficient purposeful contacts with Utah to confer specific personal jurisdiction over Tor in Utah. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008). Contrary to Plaintiffs' assertions that Tor's connections with Utah are not "random, fortuitous, or attenuated," Opp. at 10, any network traffic that may have passed through Utah relays would be exactly that—random or fortuitous. Traffic bounces from relay to relay in the Tor network, without predictability, before connecting the user with the end-destination (here, a website—AlphaBay). Even assuming that the Plaintiffs' sons' friends' internet traffic was routed through a Utah relay—which is

3

not alleged in the Complaint—that routing would be random rather than purposeful or intentional, and therefore insufficient to confer personal jurisdiction over Tor in Utah.

Plaintiffs' allegation that Tor purposefully directs its efforts into Utah also fail. The most Plaintiff can muster here is a claim that because Tor is generally available to anyone around the world, and because it encourages all-comers to run relays, and because the Plaintiffs' son's friends in Utah actually used Tor to reach AlphaBay, Tor somehow purposefully directed its activities at Utah. Again, specific jurisdiction claims require significantly more.

### 2. Tor is Entitled to the Section 230's Broad Immunity.

Plaintiff is also wrong in claiming that the Communications Decency Act, 47 U.S.C. § 230, does not apply to Tor. *See* Opp. at 12, 14. It does.

First, Tor is a "provider … of an interactive computer service" because it "provides or enables computer access by multiple users to a computer server." *See* 47 U.S.C. § 230(f)(2). Tor enables users to access websites around the world. The statute is interpreted broadly to include "Internet intermediaries," like Tor. *Hassell v. Bird*, 420 P.3d 776, 880 (Cal. 2018) (reviewing validity of court order directing Yelp Inc. to remove certain consumer reviews), not just online bulletin boards or first-party content hosts like Facebook, as Plaintiffs suggest, Opp. at 11. Section

230 has been applied to website hosting services (GoDaddy), *Ricci v. Teamsters Union Local 456*, 781 F.3d 25, 27 (2d Cir. 2015), and search engines and online directory advertisement providers, *Baldino's Lock & Key Serv., Inc. v. Google, Inc.*, 88 F. Supp. 3d 543, 546 (E.D. Va.), *aff'd,* 624 F. App'x 81 (4th Cir. 2015). Section 230 also does not exempt interactive computer service providers that happen to provide access anonymously—the method of access is simply irrelevant to the Section 230 text and caselaw.

Second, by attempting to extend liability to Tor, Plaintiffs are undoubtedly trying to hold Tor liable as a speaker or publisher of content provided by someone else—here AlphaBay. *See* 47 U.S.C. § 230(c)(1). Plaintiffs allege that their sons' friends were able to browse to the AlphaBay website and purchase U-47700. Compl. ¶ 17 doc. 2. Tor's only connection to Plaintiffs' alleged injuries is that Plaintiffs' sons' friends used Tor to access and view website content and purchase a substance to be shipped to them. Plaintiffs' own characterization of Tor's role, that it "facilitated" access to the AlphaBay website, Opp. at 14, fits easily within Section 230's framework, which immunizes publishers and distributors of Internet content created by others. Courts of other jurisdictions have concluded that Section 230 applies to "distributors" as well as "publishers" of Internet content. *Barrett v. Rosenthal*, 146 P.3d 510, 514–17 (Cal. 2006) (discussing *Zeran*). Section 230,

"[b]y its plain language … creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service. Specifically, [Section] 230 precludes courts from entertaining claims that would place a computer service provider in a publisher's role . . . such as deciding whether to publish, withdraw, postpone or alter content." *Hassell*, 420 P.3d at 785 (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997)).

Finally, Section 230 applies because, setting aside Plaintiffs' conclusory allegations, the content that Plaintiffs' son's friends accessed was wholly created by those who run the AlphaBay website (or more likely, a seller on that website), and Tor did not influence the content's creation in any way. "[A] website does not create or develop content when it merely provides a neutral means by which third parties can post information of their own independent choosing online." *Klayman v. Zuckerberg*, 753 F.3d 1354, 1358 (D.C. Cir. 2014) (finding Section 230 immunity for Facebook regarding threats posted by the Third Palestinian Intifada).

The Ninth Circuit's logic, in *Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1169 (9th Cir. 2008), is helpful for understanding the difference between Tor's role and one that might engender liability. There, the Ninth Circuit emphasized that "providing neutral tools to carry out what may be unlawful or illicit searches does not amount to 'development' for

6

purposes of the immunity exception." 521 F.3d at 1169. "If an individual uses an ordinary search engine to query for a 'white roommate,'" the Ninth Circuit reasoned, "the search engine has not contributed to any alleged unlawfulness in the individual's conduct." Id. The court also explained that the same reasoning governed Carafano v. Metrosplash.com, Inc., 339 F.3d 1119 (9th Cir. 2003)—in which a prankster created a fake, libelous dating profile for an actress—because "the website provided neutral tools, which the anonymous dastard used to publish the libel, but the website did absolutely nothing to encourage the posting of defamatory content—indeed, the defamatory posting was contrary to the website's express policies." Id. at 1171.

Under the logic of *Roommates.com*, the "development" of content is "not merely ... augmenting the content generally, but ... materially contributing to its alleged unlawfulness." Roommates.Com, 521 F.3d at 1167–68; see also Jones v. Dirty World Entm't Recordings LLC, 755 F.3d 398, 410 (6th Cir. 2014) (citing Roommates.Com as the "leading" circuit decision providing a "workable" definition of information "development."). The same is true here. Tor remains immune because its neutral routing services, available to all, does not amount to content "development" for purposes of losing Section 230 immunity.

7

### 3. Plaintiffs' Claims are not Traceable to Tor.

The pleading stage is a proper time for the Court to examine Plaintiffs' claims against Tor and determine whether they state cognizable claims on their face. Here, as Plaintiffs point out in their Opposition, Plaintiffs claim that their sons' friends used Tor to browse to the AlphaBay website and purchase U-47700, which was then shipped to their sons' friends from China. Opp. at 2 n.1. Tor did not manufacture the U-47700, it did not list it for sale on the AlphaBay website, it did not write the listing language on the website, it did not create the website, and it did not deliver the U-47700 to Plaintiffs' sons' friends. Plaintiffs' allegations, that their sons' friends' Internet traffic was routed through the Tor network, are insufficient to state claims against Tor, and Tor should be dismissed.

## Conclusion

Plaintiffs' claims against Tor should be dismissed with prejudice and without leave to amend because the Court lacks jurisdiction, because Tor is immune under Section 230, and because Plaintiffs have failed to state cognizable claims against Tor.

Dated this  4th  day of January, 2019.

                              **LITCHFIELD CAVO LLP**

                              /s/ Greg Soderberg
                              VINCENT J. VELARDO
                              GREG SODERBERG
                              Attorneys for Defendant The Tor Project, Inc.

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **THE TOR PROJECT, INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FOR FAILURE TO STATE A CLAIM,** in Case No. 2:18-cv-00712-DB-DBP in the United States District Court, District of Utah, Central Division, was filed via CM/ECF, on the 4th day of January, 2019, giving electronic notice of such filing to the following:

**Counsel for Plaintiff**
Jeffrey D. Gooch
J. Angus Edwards
JONES WALDO HOLBROOK & MCDONOUGH, P.C.
170 South Main Street, Suite 1500
Salt Lake City, Utah 84101
jgooch@joneswaldo.com
aedwards@joneswaldo.com

/s/ Adrianna E. Hebard
ADRIANNA E. HEBARD