

**UNIVERSAL POSTAL UNION**

FILED
U.S. DISTRICT COURT

2019 MAR 14 P 2: 55

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

**International Bureau**
Weltpoststrasse 4
PO Box 312
3000 BERNE 15
SWITZERLAND
T +41 31 350 31 11
F +41 31 350 31 10
www.upu.int

Contact: Ms Melony MORGAN
T +41 31 350 32 15
melony.MORGAN@upu.int

Mr D Mark Jones
Clerk of Court
United States District Court for
the District of Utah
351 South West Temple, Rm. 1.100
SALT LAKE CITY, UTAH 84101
UNITED STATES OF AMERICA

Berne, 8 March 2019

**Reference:**   0006/DAJ

**Subject:**   Summons in a civil action

Dear Mr Jones,

Reference is made to your letter dated 26 September 2018, which enclosed a summons in the case of "James and Deborah Seaver, as parents and heirs of G.S., deceased v. The estate of Alexandre Cazes, deceased, a citizen of Canada, former doing business as ALPHABAY; the TOR Project, Inc., aka the Onion Router, a Massachusetts non-profit corporation; China Postal Express & Logistics Company aka China Post aka China Courier Services Cooperation, a Chinese corporate or government entity; and EMS Cooperative dba Express Mail Service, a foreign entity". The summons was received by the Universal Postal Union (UPU) from the United States District Court for the District of Utah through the intermediary of the Tribunal régional de Berne-Mittelland.

The summons states that a lawsuit has been filed against the EMS Cooperative, a body of the UPU, and names it as a Defendant in the above case. The summons also calls on the EMS Cooperative to serve to the plaintiff in the matter an answer to the complaint set out in the summons, or a motion under Rule 12 of the Federal Rules of Civil Procedure, within 21 days of service of the summons.

By way of the present letter, the UPU takes this opportunity to clarify that, as an intergovernmental organization and specialized agency of the United Nations, and pursuant to Title I, Section 2 of the International Organizations Immunities Act of 1945 as well as Executive Order 10727 – Designating the Preparatory Commission of the International Atomic Energy Agency, the International Atomic Energy Agency and the universal Postal Union as Public International Organizations Entitled to Enjoy Certain Privileges, Exemptions and Immunities, the UPU enjoys on the territory of the United States of America immunity from every form of legal process, except insofar as the UPU has expressly waived such immunity. We would note that the UPU has not expressly waived its immunity in respect of this matter. Furthermore, the aforementioned legislation prescribes that the property and assets of the UPU are immune from search, requisition, confiscation, expropriation and any other form of interference, whether by executive, administrative, judicial or legislative action.

Moreover (and without prejudice to the fundamental considerations outlined above), we may take this opportunity to note that the so-called "EMS Cooperative" is merely an internal body established by the UPU's Postal Operations Council; consequently, such a body is not a legal entity *per se* nor does it possess any requisite legal capacity to institute proceedings or have such proceedings instituted against it within the meaning of the aforementioned Act. In addition, the aforementioned body is not a designated operator

responsible for the operation of postal services and fulfilment of related obligations arising out of the Acts of the UPU as defined under article 1bis.1.1.7 of the UPU's Constitution.

Strictly for informational purposes, we may also take this opportunity to emphasize that responsibility for the adoption and implementation of international postal rules falls solely under the purview of UPU member countries and their designated operators. More specifically, the Universal Postal Convention (one of the Acts of the Union defined in article 22 of its Constitution), as the international treaty which embodies the rules applicable throughout the international postal services defined therein, provides in its article 8 that UPU member countries and their designated operators shall observe the security requirements defined in the UPU's security standards, and adopt and implement a proactive security strategy. Core components of the aforementioned strategy include, *inter alia*, compliance with requirements for providing electronic advance data on postal items, and the exchange of information on maintaining safe and secure transportation and transit of postal items between UPU member countries and their designated operators.

In view of the above elements, we must hereby reiterate that the UPU expressly asserts and maintains its immunities in respect of the aforementioned matter. Accordingly, we respectfully request that the United States District Court for the District of Utah take any appropriate steps to ensure that the privileges and immunities of the UPU are duly maintained in respect of this legal action.

The UPU also takes this opportunity to respectfully request that any future communications addressed to the Organization be duly transmitted through the United States Department of State, as the appropriate diplomatic channel within the United States of America for the purpose of exchanges with United Nations system entities.

Alternatively, future communications addressed to Switzerland (where the UPU headquarters are located) could be sent through the intermediary of the Permanent Mission of Switzerland to the United Nations Office and to the other international organisations in Geneva, as the appropriate diplomatic channel on Swiss territory for the purpose of exchanges with United Nations system entities.

In conclusion, we may note that the UPU has equally brought this matter (and associated correspondence) to the attention of the aforementioned diplomatic instances for their information and any other action deemed appropriate by the latter.

Yours sincerely,

Ricardo Guilherme Filho
Director of Legal Affairs

Copies:      United States Department of State

Permanent Mission of Switzerland to the United Nations Office and to the other international organisations in Geneva

Jones Waldo Holbrook & McDonough, P.C.

**Regionalgericht
Bern-Mittelland**

LSI

Zivilabteilung
Gerichtspräsidentin
Sanwald

Effingerstrasse 34
3008 Bern
Telefon 031 635 46 00
Fax 031 634 50 65
regionalgericht-zivil.bern@justice.be.ch
www.justice.be.ch/regionalgerichte

EMS Cooperative
c/o Weltpostverein
Weltpoststrasse 4
Postfach 312
3000 Bern 15

Verfahren Nr.: CIV 18 6557  KRL

Bern, 5. November 2018

## Zustellung gerichtlicher oder aussergerichtlicher Schriftstücke auf Ersuchen einer ausländischen Behörde

Sehr geehrte Damen und Herren

Im Auftrag des Obergerichts des Kantons Bern (Kantonale Zentralbehörde für internationale Rechtshilfe) lasse ich Ihnen die beiliegenden Schriftstücke zustellen.

In der Beilage erhalten Sie ausserdem die Angaben über den wesentlichen Inhalt der zuzustellenden Schriftstücke.

Beachten Sie bitte, dass wir zu dem vor dem ausländischen Gericht hängigen Verfahren keine Auskünfte oder Ratschläge erteilen können.

Freundliche Grüsse

Regionalgericht Bern-Mittelland
Zivilabteilung

Die Gerichtspräsidentin:

Sanwald



Beilagen:
– zuzustellende Schriftstücke gemäss Verzeichnis

**Hinweise:**
Eingaben müssen spätestens am letzten Tag der Frist beim Gericht eingereicht oder zu dessen Handen der Schweizerischen Post oder einer schweizerischen diplomatischen oder konsularischen Vertretung übergeben werden (Art. 143 Abs. 1 ZPO).
Eingaben per Fax und E-Mail sind nicht rechtsgültig und haben keine fristwahrende Wirkung.
Unter bestimmten Voraussetzungen können Eingaben elektronisch erfolgen. Genauere Angaben hierzu finden Sie auf der Internetseite der Berner Justiz (http://www.justice.be.ch/elektronische-eingaben).
Bei Eingaben ist jeweils die Dossiernummer (CIV 18 6557) anzugeben.

Case 2:18-cv-00712-DB Document 7 Filed 09/26/18 Page 1 of 2

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

District of Utah

| | |
|---|---|
| JAMES and DEBORAH SEAVER, as parents and heirs of G.S., deceased, <br><br> _____ <br> *Plaintiff(s)* <br> v. <br> The ESTATE of ALEXANDRE CAZES, deceased, a citizen of Canada, formerly doing business as ALPHABAY; THE TOR PROJECT, INC., aka THE ONION ROUTER, a Massachusetts non-profit corporation; CHINA POSTAL EXPRESS & LOGISTICS COMPANY aka CHINA POST aka CHINA COURIER SERVICES CORPORATION, a Chinese corporate or governmental entity; and EMS COOPERATIVE dba EXPRESS MAIL SERVICE, a foreign entity, <br> _____ <br> *Defendant(s)* | ) ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. 2:18-cv-00712-DB |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  EMS Cooperative
c/o Universal Postal Union
Welpoststrasse 4
3015 Bern
Switzerland

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: Jeffrey D. Gooch
J. Angus Edwards
Jones Waldo Holbrook & McDonough, P.C.
170 S. Main Street, Suite 1500
Salt Lake City, UT 84101
USA

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

D. Mark Jones
*CLERK OF COURT*

Date: _____09/26/2018_____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  2:18-cv-00712-DB

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.


Date: _____        _____
                                                *Server's signature*

                                         _____
                                                *Printed name and title*


                                         _____
                                                *Server's address*

Additional information regarding attempted service, etc:


## Morningside
Translations

450 Seventh Ave.
Tenth Floor
New York, NY 10123
(212) 643-8800

## TRANSLATION CERTIFICATION

Date: September 28, 2018

To whom it may concern:

This is to certify that the attached translation from English into French is an accurate representation of the document received by this office.

The document is designated as:

- (Issued) Summons for EMS Cooperative.pdf- French Translation

Emily Sanders, Project Manager in this company, attests to the following:

"To the best of my knowledge, the aforementioned document is a true, full and accurate translation of the specified document."

*CCSANDERS*

Signature of Emily Sanders

CERT-07, 12/05/2017, Ver. 1

**Global Solutions. Local Expertise.**

www.morningtrans.com  |  info@morningtrans.com

Affaire 2:18-cv-00712-DB Document 7 déposé le 26/09/18 Page 1 sur 2

AO 440 (Rév. 06/12) Assignation dans une action civile

## TRIBUNAL FEDERAL DES ÉTATS-UNIS
Pour le
District de Utah

| | |
|---|---|
| JAMES et DEBORAH SEAVER, en tant que parents | ) |
| | ) |
| | ) |
| ——————————————— | ) |
| Demandeur(s) | ) |
| | ) |
| v. | )    Action civile no. 2:18-cv-00712-DB |
| L'IMMOBILIER d'ALEXANDRE CAZES, décédé, | ) |
| citoyen du Canada, anciennement ALPHABAY ; | ) |
| THE TOR PROJECT, INC, alias THE ONION ROUTER, | ) |
| une société à but non lucratif du Massachusetts ; | ) |
| CHINE POSTAL EXPRESS & LOGISTICS COMPANY | ) |
| alias CHINA POST alias | ) |
| CHINE COURIER SERVICES CORPORATION, | ) |
| une personne morale ou | ) |
| une entité gouvernementale chinoise ; | ) |
| et EMS COOPERATIVE dba EXPRESS MAIL | ) |
| SERVICE, une entité étrangère. | ) |
| ——————————————— | ) |
| *Défendeur(s)* | ) |

### ASSIGNATION DANS UNE ACTION CIVILE

A : (*Nom et adresse du défendeur*)    EMS Cooperative
c/o Universal Postal Union
Welpoststrasse 4
3015 Bern
Suisse

Un procès a été intenté contre vous.

Dans les 21 jours suivant la signification de cette citation à comparaître (sans compter le jour où vous l'avez reçue) - ou 60 jours si vous êtes les États-Unis ou un organisme américain, ou un dirigeant ou un employé des États-Unis décrit dans Fed. R. Civ. P. 12 (a)(2) ou (3) - vous devez signifier au demandeur une réponse à la plainte ci-jointe ou une requête en vertu de la règle 12 des Règles fédérales de procédure civile. La réponse ou la requête doit être signifiée au demandeur ou à son procureur, dont le nom et l'adresse sont :

    Jeffrey D. Gooch
    J. Angus Edwards
    Jones Waldo Holbrook & McDonough,
    C.P. 170 S. Main Street, Suite 1500
    Salt Lake City, UT 84101
    ÉTATS-UNIS

Si vous ne répondez pas, un jugement par défaut sera rendu contre vous pour le redressement demandé dans la plainte. Vous devez également déposer votre réponse ou votre requête auprès du tribunal.

Date : 26/09/2018        [Joint]        D. Mark Jones
                                     *GREFFIER DE LA COUR*
                                     *[Signature]*
                                     *Signature du greffier ou du sous-greffier*



**Morningside**
Translations

450 Seventh Ave.
Tenth Floor
New York, NY 10123
(212) 643-8800

## TRANSLATION CERTIFICATION

Date: September 28, 2018

To whom it may concern:

This is to certify that the attached translation from English into German is an accurate representation of the document received by this office.

The document is designated as:

- (Issued) Summons for EMS Cooperative - German Translation

Emily Sanders, Project Manager in this company, attests to the following:

"To the best of my knowledge, the aforementioned document is a true, full and accurate translation of the specified document."

*CCSANDERS*

_____
Signature of Emily Sanders

**Global Solutions.** Local Expertise.

Fall 2:18-cv-00712-DB Dokument 7 abgelegt 26.09.18 Seite 1 von 2

AO 440 (Rev. 06/12) Vorladung in zivilrechtlicher Sache

# BERZIRKSGERICHT VEREINIGTE STAATEN

für den
Bezirk Utah

JAMES und DEBORAH SEAVER, als Eltern
und Erben von G.S., verstorben,

Kläger

gegen

Die ERBMASSE von ALEXANDRE CAZES, verstorben, ein
Bürger von Kanada, früher handeltreibend unter ALPHABAY;
THE TOR PROJECT, INC., aka THE ONION ROUTER, ein
Massachusetts gemeinnützig arbeitendes Unternehmen; CHINA
POSTAL EXPRESS & LOGISTICS COMPANY aka CHINA
POST aka CHINA COURIER SERVICES CORPORATION, eine
chinesische Unternehmens- oder Regierungsorganisation; und
EMS COOPERATIVE Handel treibend als EXPRESS MAIL
SERVICE, eine ausländische Organisation.

Civil Action No. 2:18-cv-00712-DB

## VORLADUNG IN ZIVILRECHTLICHER SACHE

An: (Name und Anschrift des Beklagten)

EMS Cooperative

per Adresse

Universal Postal Union

Welpoststrasse 4

3015 Bern Schweiz

Eine Klage wurde gegen Sie eingereicht.

Innerhalb von 21 Tagen nach Zustellung dieser Vorladung an Sie (ohne den Tag, an dem Sie diese erhalten haben) -
oder 60 Tage, wenn Sie die Vereinigten Staaten oder eine Agentur der Vereinigten Staaten oder ein Beamter oder
Angestellter der Vereinigten Staaten laut Bundesverfahrensordnung (Fed. R. Civ.) P. 12 (a) (2) oder (3) sind - müssen
Sie dem Kläger eine Antwort auf die beigefügte Beschwerde oder einen Antrag nach Regel 12 der
Zivilprozessordnung des Bundes geben. Die Antwort oder der Antrag muss dem Anwalt des Klägers oder Klägers
zugestellt werden,
dessen Name und Adresse sind:

Jeffrey D. Gooch

J. Angus Edwards

Jones Waldo Holbrook & McDonough, P.C.

170 S. Main Street, Suite 1500

Salt Lake City, UT 84101 Vereinigte Staaten

Wenn Sie nicht antworten, wird für die in der Klage geforderte Abhilfe ein Versäumnisurteil gegen Sie gefällt.
Sie müssen Ihre Antwort oder Ihren Antrag auch beim Gericht einreichen.

D. Mark Jones

Datum: 26.09.2018

*[Signature]*

Unterschrift des Gerichtsschreibers oder stellvertretenden
Gerichtsschreibers

[Emblem: Bezirksgericht Vereinigte Staaten, Bezirk Utah, Vorladung]

## SUMMARY OF THE DOCUMENT TO BE SERVED
### ÉLÉMENTS ESSENTIELS DE L'ACTE

**Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, signed at The Hague, the 15th of November 1965 (Article 5, fourth paragraph).**

Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou extrajudiciaires en matière civile ou commerciale, signée à La Haye le 15 novembre 1965 (article 5, alinéa 4).

| | |
|---|---|
| **Name and address of the requesting authority:**<br>Nom et adresse de l'autorité requérante : | Jeffrey D. Gooch<br>C. Michael Judd<br>170 South Main Street, Suite 1500<br>Salt Lake City, Utah 84095<br>Email: mjudd@joneswaldo.com |
| **Particulars of the parties*:**<br>Identité des parties* : | James Seaver and Deborah Seaver (Plaintiffs)<br>The Estate of Alexandre Cazes d/b/a AlphaBay (Defendant)<br>The TOR Project, Inc. (Defendant)<br>China Postal Express & Logistics Company (Defendant)<br>EMS Cooperative d/b/a Express Mail Service (Defendant) |

\* If appropriate, identity and address of the person interested in the transmission of the document
S'il y a lieu, identité et adresse de la personne intéressée à la transmission de l'acte

☑ **JUDICIAL DOCUMENT****
ACTE JUDICIAIRE**

| | |
|---|---|
| **Nature and purpose of the document:**<br>Nature et objet de l'acte : | The summons notifies the defendant of its obligation to answer or otherwise respond to the complaint within 21 days of service.<br><br>The complaint notifies the defendant of the nature of the plaintiff's claims and the plaintiff's demand for relief. |
| **Nature and purpose of the proceedings and, when appropriate, the amount in dispute:**<br>Nature et objet de l'instance, le cas échéant, le montant du litige : | Defendants' involvement in the business of marketing, distributing, selling, shipping, and transporting synthetic opioids led to the death of Plaintiffs' 13-year-old son and resulted in damages in excess of $10,000,000 (US). |
| **Date and Place for entering appearance****:**<br>Date et lieu de la comparution** : | N/A |
| **Court which has given judgment****:**<br>Juridiction qui a rendu la décision** : | N/A |
| **Date of judgment****:**<br>Date de la décision** : | N/A |
| **Time limits stated in the document****:**<br>Indication des délais figurant dans l'acte** : | An answer or other response must be served within 21 days of the date of service of process and must be filed with the court within a reasonable time thereafter. |

** If appropriate / s'il y a lieu

☐ **EXTRAJUDICIAL DOCUMENT****
ACTE EXTRAJUDICIAIRE**

| | |
|---|---|
| **Nature and purpose of the document:**<br>Nature et objet de l'acte : | N/A |
| **Time-limits stated in the document****:**<br>Indication des délais figurant dans l'acte** : | N/A |

** If appropriate / s'il y a lieu

JEFFREY D. GOOCH (7863)
J. ANGUS EDWARDS (4563)
**JONES WALDO HOLBROOK & MCDONOUGH, P.C.**
170 South Main Street, Suite 1500
Salt Lake City, Utah 84101
Tel.: (801) 521-3200
jgooch@joneswaldo.com
aedwards@joneswaldo.com

*Attorneys for the Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| JAMES SEAVER and DEBORAH SEAVER, as parents and heirs of G.S., deceased,<br><br>          Plaintiffs,<br><br>v.<br><br>The ESTATE of ALEXANDRE CAZES, deceased, a citizen of Canada, formerly doing business as ALPHABAY; THE TOR PROJECT, INC. aka THE ONION ROUTER, a Massachusetts non-profit corporation; CHINA POSTAL EXPRESS & LOGISTICS COMPANY aka CHINA POST aka CHINA COURIER SERVICES CORPORATION, a Chinese corporate or governmental entity; and EMS COOPERATIVE dba EXPRESS MAIL SERVICE, a foreign entity,<br><br>          Defendants. | **COMPLAINT**<br>**(JURY DEMANDED)**<br><br>Case No.:<br><br>Judge: |

COME NOW the Plaintiffs, by and through Jeffrey D. Gooch of Jones Waldo, and hereby complain of Defendants and allege as follows:

## I.  PARTIES

1.    Plaintiffs James and Deborah Seaver are residents of Summit County, Utah, and the parents and heirs of G.S., deceased.

2.     Defendant AlphaBay is a foreign business founded in 2014 by a Canadian citizen, Alexandre Cazes, with his principal place of business in Thailand, until Mr. Cazes killed himself during July 2017. Prior to the cessation of operations in July 2017, AlphaBay did business within the State of Utah by selling products through a stream of commerce that ended in Summit County, Utah.

3.     Defendant The Tor Project, Inc. aka The Onion Router ("TOR") is a Massachusetts corporation with its principal place of business in Norton, Massachusetts.

4.     Defendant China Post Group Corporation (中国邮政集团公司) aka China Post aka China Postal Express & Logistics Company aka China Courier Services Corporation has its principal place of business in Beijing, China, and may be partly or wholly owned by the Chinese government.

5.     Defendant EMS Cooperative dba Express Mail Service ("EMS") is a foreign organization providing global delivery services. EMS utilizes a mailing address in Berne, Switzerland.

## II.  JURISDICTION AND VENUE

6.     The amount of controversy in this matter exceeds $75,000 exclusive of interest and costs.

7.     This Court has original jurisdiction pursuant to 28 U.S.C. §1332(a)(2).

8.     All the Defendants have business contracts within the State of Utah, including by and through their distributors, because of sales of their products or their delivery of these products in the State of Utah to be used within the State of Utah.

## III.  FACTS COMMON TO ALL CLAIMS FOR RELIEF

9.     This action is the result of the death of G.S., a 13 year-old boy, on September 11, 2016.

10.    G.S.'s death was caused by ingesting the illicit drug U-47700.

11.     Numerous drug labs in China manufacture and sell U-47700 using a patent obtained by the creator of U-47700, Jacob Szmuszkovicz.

12.     If U-47700 is manufactured to the exact specifications of its publicly available patent it is purportedly seven and a half times more potent than morphine.

13.     From 2014 to July 2017, the AlphaBay website was the largest dark web market selling controlled substances and illicit drugs, including substances and drugs manufactured in China.

14.     The AlphaBay website provided anonymity to its users engaged in illicit commerce by being accessible only through The Onion Router ("TOR") network of computers.

15.     TOR only transacted business using cryptocurrencies or digital currencies and concealed IP addresses. Cryptocurrencies such as Bitcoin, Monero and Ethereum operate entirely on a decentralized peer-to-peer network, do not exist in a physical form, and are designed to be anonymous. Cryptocurrency payments are recorded on a public ledger that is maintained by peer-to-peer verification, known as the "Blockchain."

16.     On information and belief, shortly before G.S.'s death, two of his friends, minor children C.S. and J.A., purchased U-4770 from China using AlphaBay.

17.     On information and belief, at the time C.S. and J.A. purchased U-47700, it was not listed a Schedule I controlled substance by the US Drug Enforcement Administration ("DEA").

18.     During late 2016, the DEA listed U-47700 as a Schedule I controlled substance making it illegal to manufacture, purchase, distribute, or possess U-47700.

19.     At the time U-47700 was purchased from China by C.S. and J.A., it was, or should have been, a Schedule I controlled substance, since it was many times more potent than morphine and caused numerous deaths during 2016.

20.     Chinese producers distribute U-47700 into the United States using the same method as other fentanyl products. The United States Senate has recently investigated the distribution of

illicit fentanyl. *U.S. Senate Committee on Homeland Security and Governmental Affairs, Combatting the Opioid Crisis: Exploiting the Vulnerabilities in International Mail.*

21.   U-47700 is a chemical pseudonym for a fentanyl product. *Id.* at 31.

22.   According to the DEA, China is the primary source of supply for fentanyl and customers can purchase it from Chinese laboratories online (the "Sellers") that are shipped via mail services. *Id.* at 1.

23.   The Sellers prefer to be paid through cryptocurrencies such as Bitcoin, which offers a certain level of anonymity. *Id.* at 2.

24.   The preferred method of shipment of fentanyl products by the online sellers is EMS, a global delivery service through each member country's postal operations. *Id.*

25.   The United States is a member of the 1874 treaty which created the Universal Postal Union. As a member, the United States has designated the USPS as the operator obligated to accept packages from China through the EMS global network. *Id.* at 5. Specifically, when packages are sent by China Post to the United States they pass through an international service center at one of five airports in the United States and are delivered by the USPS. *Id.* at 3–5.

26.   After the September 11 terrorist attacks, the Trade Act of 2002 required express consignment operators ("ECOs"), including FedEx and UPS, to collect security information for all packages shipped through their networks. *Id.* at 6.

27.   Unlike the ECOs, the USPS relies on foreign postal service operators to collect security information on internationally shipped packages that USPS delivers domestically. *Id.* at 7.

28.   Because of the security-information collection requirements for ECOs, all international online sellers of fentanyl prefer to avoid detection of their shipments of fentanyl by shipping their purchases through EMS. *Id.* at 8.

29.   Prior to G.S.'s death, China Post, EMS, and USPS knew that Chinese online sellers were shipping fentanyl products to Americans using their services.

30. The shipment services provided by China Post, EMS, and USPS were essential and integral for the online sellers of fentanyl in China to distribute U-47700 in the United States.

31. On information and belief, at 1:46 p.m. on August 26, 2016, the USPS delivered the U-47700 that killed G.S.

32. To avoid detection by law enforcement agencies as international sellers of fentanyl products, the Sellers only sold fentanyl on the dark web by accepting payment in cryptocurrencies and shipped their fentanyl products using EMS.

33. At the time Defendants shipped, marketed, distributed, sold, and/or transported the U-47700 to C.S. and J.A., they knew, or should have known, that minor children were purchasing U-47700.

34. At the time Defendants shipped, marketed, distributed, sold, and/or transported the U-47700 to C.S. and J.A., they knew it was, or should have been, a Schedule I controlled substance.

35. At the time the Defendants shipped, marketed, distributed, sold, and/or transported the U-47700 to C.S. and J.A., they knew it was many times more potent than morphine and had caused numerous deaths during 2016.

36. At the time Defendants shipped, marketed, distributed, sold, and/or transported sold the U-47700 to C.S. and J.A., they knew that U-47700 so unreasonably dangerous that ingestion of almost any amount could cause death.

## FIRST CAUSE OF ACTION: STRICT LIABILITY

37. Plaintiffs incorporate by reference the preceding allegations as if fully set forth herein.

38. Defendants were engaged in the business of marketing, distributing, selling, shipping, and transporting U-47700, and did market, distribute, ship, transport and sell U-47700 (also known as "Pink" or "Pinky").

39. U-47700 was placed into the stream of commerce in an unreasonably dangerous condition to the public and the class of persons to which Plaintiffs and G.S. were members.

COMPLAINT
5

40.   Defendants each had a duty to place safe products into the stream of commerce, including by marketing, distributing, selling, shipping, and transporting U-47700 that was not unreasonably dangerous when put to its intended or designed use and for all foreseeable uses.

41.   Defendants knew or expected that the U-47700 that they placed into the stream of commerce by marketing, distributing, selling, shipping, and transporting, was promoted to reach, and did in fact reach, users and consumers in the State of Utah with no change in its condition from the time of design and manufacture through the time the drugs were sold and shipped or transported.

42.   At the time U-47700 entered the stream of commerce, it was in an unreasonably dangerous condition. U-47700 was unreasonably dangerous for numerous reasons including, but not limited to, the following:

    a.   U-47700 was unreasonably dangerous when used as designed or intended;

    b.   U-47700 was designed to be unreasonably dangerous

    c.   U-47700 was manufactured to be unreasonably dangerous;

    d.   U-47700 was insufficiently tested;

    e.   U-47700 was not labeled as an unreasonably dangerous product:

    f.   U-47700 was not marketed as an unreasonably dangerous product;

    g.   U-47700 was distributed, despite knowledge that it was unreasonably dangerous;

    h.   U-47700 was sold, despite knowledge that it was unreasonably dangerous;

    i.   U-47700 was shipped and transported, despite knowledge that it was unreasonably dangerous.

43.   When U-47700 was used for purposes reasonably foreseeable to Defendants, it posed a high risk of causing death that an ordinary and reasonable person would not expect.

COMPLAINT

6

44.   Defendants knew or should have known that persons such as Plaintiffs and G.S. who consumed or ingested U-47700 were at high risk of death from even small amounts of the product, but they failed to label or warn such persons of these high risks of death.

45.   U-47700 was unreasonably dangerous at the time Defendants placed it into the stream of commerce.

46.   U-47700 was expected to and did reach the ultimate user without substantial change in the condition in which it was placed into the stream of commerce.

47.   Defendants knew, or reasonably should have known, of the unreasonable danger posed by use and distribution of U-47700.

48.   The unreasonably dangerous condition of U-47700 and the failure to provide adequate warnings of its high risk of death were the direct and proximate cause of the death of Plaintiffs' minor son G.S.

49.   In addition, the unreasonably dangerous condition of U-47700 was the result of willful and malicious or intentionally fraudulent conduct, or conduct that manifested a knowing and reckless indifference toward, and disregard of, the rights and safety of others, as will be demonstrated by clear and convincing evidence at trial. Accordingly, pursuant to Utah Code Ann., § 78B-8-201, Plaintiffs are entitled to an award of punitive damages.

### SECOND CAUSE OF ACTION: NEGLIGENCE/GROSS NEGLIGENCE

50.   Plaintiffs incorporate by reference the preceding allegations as if fully set forth herein.

51.   At all relevant times, Defendants had a duty to place safe products into the stream of commerce, including by marketing, distributing, selling, shipping, and transporting U-47700 that was not unreasonably dangerous when put to its intended or designed use and for all foreseeable uses.

52. Defendants negligently placed U-47700 into the stream of commerce and failed to provide adequate warnings regarding the unreasonable dangers and high risk of death from U-4700, when used as designed or intended, resulting in the death of G.S.

53. Defendants had a duty to every consumer to prevent entry of U-47700 into the stream of commerce, especially to minors like G.S.

54. Defendants knew or had reason to know that Plaintiffs and G.S., as members of the general public, did not know of the high risk of death from U-4700, as described in this Complaint.

55. Defendants failed to exercise reasonable care in placing U-4700 into the stream of commerce and Defendants' negligence and gross negligence were a direct and proximate cause of the death of G.S.

56. In addition, Defendants' conduct manifests a knowing and reckless indifference toward, and disregard of, the rights of others, as will be demonstrated by clear and convincing evidence at trial. Accordingly, pursuant to § 78B-8-201, Plaintiffs are entitled to an award of punitive damages for Defendants' gross negligence.

### THIRD CAUSE OF ACTION: ABNORMALLLY DANGEROUS ACTIVITY

57. Plaintiffs incorporate by reference the preceding allegations as if set forth fully herein.

58. As described in this Complaint, Defendants' actions and activities were abnormally dangerous.

59. Defendants knew that placing U-47700 into the stream of commerce created a high risk of death to G.S. and other minor children.

60. Because Defendants' actions and activities were abnormally dangerous, they are liable for the death of G.S. whether or not they exercised or not they exercised reasonable care.

## FOURTH CAUSE OF ACTION: CIVIL CONSPIRACY

61.    Plaintiffs incorporate by reference the preceding allegations as if set forth fully herein.

62.    As described in this Complaint, the design, manufacture, distribution, shipping, and transport of the dangerous products at issue in this litigation requires a combination of two or more persons. The Defendants in this action are members of that combination.

63.    Defendants share an object to be accomplished: the design, manufacture, distribution, shipping, and transport of U-47700 and other similar products, which enrich the members of the combination.

64.    Defendants have had a meeting of the minds on their object or course of action.

65.    In seeking to accomplish their shared object, Defendants have committed on or more unlawful, overt acts.

66.    Plaintiffs have sustained damages as a direct and proximate result of the unlawful, overt acts committed by Defendants in seeking to accomplish their shared object.

## DAMAGES

67.    As a direct and proximate result of the Defendants' acts, activities, and other wrongdoing by the Defendants, Plaintiffs have sustained damages in excess of $10 million, including, but not limited to, the following:

      a.    General damages for the wrongful death of G.S. in a reasonable sum;

      b.    Any and all wrongful death damages for the death of G.S.;

      c.    Survival Damages for G.S.;

      d.    Special Damages for G.S.;

      e.    The loss of care, comfort, and society of G.S.;

      f.    Damages for emotional distress;

      g.    Special damages for medical, funeral, cremation, and related expenses incurred, in a reasonable sum;

h.   Other special damages to the extent allowed by law;

i.   Pre- and post-judgment interest, to the extent allowed by law;

j.   Cost, expenses, and attorneys' fees to the extent allowed by law;

k.   Punitive and exemplary damages;

l.   Negative jury instruction based on spoliation of evidence;

m.   Any measurable damages that have resulted from spoliation of evidence; and

n.   Such other and further relief as may be deemed just and proper under the circumstances.

68.   The negligence and carelessness of the Defendants was so grossly negligent and culpable in nature that such acts and omissions constituted recklessness and wantonness in complete disregard for the lives and safety of others and, specifically, in complete disregard for the lives and safety of the Plaintiffs and G.S.

69.   Defendants recklessly disregarded facts and circumstances, which created an unreasonable risk of harm to the Plaintiffs and G.S., and deliberately proceeded to act in conscious disregard of, or indifference to, the risk, or recklessly proceeded in an unreasonable disregard of or indifference to the risk.

70.   As a result of the negligence and gross negligence and reckless, willful, and wanton conduct of the Defendants, the Plaintiffs are entitled to recover exemplary and punitive damages.

71.   Punitive damages and exemplary damages are warranted in this action as a punishment of the Defendants for reckless and wanton acts and as a deterrent to the Defendants and others for committing the same or similar actions which endanger the general safety of the public.

72.   As a direct and proximate result of the acts and omissions of Defendants as alleged herein including, but not limited to the Defendants' negligence, gross negligence, reckless, willful and wanton conduct, the Plaintiffs are entitled to recover actual, exemplary and punitive damages.

1480538.3

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray for judgment against Defendants as follows:

73.    As a direct and proximate result of the Defendants' acts, activities, and other wrongdoing, G.S. was killed. Accordingly, Plaintiffs, as the parents and statutory Wrongful Death Heirs and Representatives of G.S., were damaged. The Plaintiffs are entitled to recover the following damages in this matter, in excess of $10 million, in amounts to be proven at trial:

      a.     Loss of care, protection, companionship, association, advice, and society;

      b.     Loss of emotional support and emotional contributions;

      c.     Loss of the hedonic value of G.S.'s life;

      d.     Punitive or exemplary damages;

      e.     For pre-judgment and post-judgment interest;

      f.     For costs of suit herein; and

      g.     For such further relief as this Court deems just and proper.

### DEMAND FOR TRIAL BY JURY

Plaintiffs demand that a jury try all of the above issues and allegations.

DATED this 7th day of September, 2018.

                        **JONES WALDO HOLBROOK & McDONOUGH, P.C.**

                                    */s/ J. Angus Edwards*
                                    Jeffrey D. Gooch
                                    J. Angus Edwards
                                    Attorneys for Plaintiffs



450 Seventh Ave.
Tenth Floor
New York, NY 10123
(212) 643-8800

## TRANSLATION CERTIFICATION

Date: September 20, 2018

To whom it may concern:

This is to certify that the attached translation from English into French is an accurate representation of the document received by this office.

The document is designated as:
- 02 Complaint.pdf

Emily Sanders, Project Manager in this company, attests to the following:

"To the best of my knowledge, the aforementioned document is a true, full and accurate translation of the specified document."

*CCSANDERS*

—————————————————
Signature of Emily Sanders

CERT-07, 12/05/2017, Ver. 1

**Global Solutions. Local Expertise.**

JEFFREY D. GOOCH (7863)
J. ANGUS EDWARDS (4563)
**JONES WALDO HOLBROOK & McDONOUGH, P.C.**
170 South Main Street, Suite 1500
Salt Lake City, Utah 84101
Tél. : (801) 521-3200
jgooch@joneswaldo.com
aedwards@joneswaldo.com
*Avocats des Demandeurs*

## AU TRIBUNAL DE DISTRICT DES ÉTATS -
## UNIS POUR LE DISTRICT DE L'UTAH
## DIVISION CENTRALE

| | |
|---|---|
| JAMES SEAVER et DEBORAH SEAVER, comme parents et héritiers de G.S., décédé,<br><br>Demandeurs,<br><br>Contre<br><br>La SUCCESSION d'ALEXANDRE CAZES, décédé, citoyen du Canada, exerçant auparavant ses activités sous le nom de ALPHABAY ;THE TOR PROJECT, INC. aka THE ONION ROUTER, une organisation à but non lucratif du Massachusetts ;CHINA POSTAL EXPRESS & LOGISTICS COMPANY aka CHINA POST aka CHINA COURIER SERVICES CORPORATION, une personne morale ou une entité gouvernementale chinoise ; et EMS COOPERATIVE dba EXPRESS MAIL SERVICE, une entité étrangère,<br><br>        Défendeurs | **PLAINTE (DEMANDE DU JURY)**<br><br>N° D'AFFAIRE:<br><br>Juge : |

Les Demandeurs, par le biais de et à travers Jeffrey D. Gooch de Jones Waldo, se plaignent par les présentes des Défendeurs et allèguent ce qui suit :

### I. PARTIES

1.    Les Demandeurs James et Deborah Seaver résident à Summit County Utah, et sont les parents et les héritiers de G.S., décédé.

1480538.3

Procès 2:18 Cause civile -- 00712-DB Document 2 Déposé 07/09/18 Page 2 de 11

2.     Le Défendeur AlphaBay est une entreprise étrangère fondée en 2014 par un citoyen canadien, Alexandre Cazes, ayant son établissement d'affaires principal en Thaïlande, jusqu'à ce que M. Cazes se tue en juillet 2017. Avant la cessation des activités en juillet 2017, AlphaBay faisait des affaires au sein de l'état de l'Utah en mettant des produits sur le marché qui arrivaient à Summit County, Utah.

3.     Le Défendeur The Tor Project, Inc. aka The Onion Router (« TOR ») est une société du Massachusetts ayant son établissement d'affaires principal à Norton, Massachusetts.

4.     Le Défendeur China Post Group Corporation (中国邮政集团公司) aka China Post aka China Postal Express & Logistics Company aka China Courier Services Corporation a son établissement d'affaires principal à Pékin, en Chine, et pourrait appartenir en partie ou en entier au gouvernement chinois.

5.     Le Défendeur EMS Cooperative dba Express Mail Service (« EMS ») est une organisation étrangère fournissant des services de livraison internationaux. EMS utilise une adresse postale à Berne, en Suisse.

## II.   JURIDICTION ET LIEU DU PROCÈS

6.     Le montant du litige dans cette affaire excède les 75.000 $ à l'exclusion des intérêts et dépens.

7.     Ce Tribunal est compétent en première instance en vertu de 28 U.S.C. §1332(a)(2).

8.     Tous les Défendeurs ont des contrats d'affaires dans l'état de l'Utah, y compris auprès de et par l'intermédiaire de leurs distributeurs, en raison des ventes de leurs produits ou de leur livraison dans l'état de l'Utah à employer dans l'état de l'Utah.

## III.   FAITS COMMUNS À TOUTES LES DEMANDES DE RÉPARATION

9.     Cette action est le résultat de la mort de G.S., un garçon de 13 ans, le 11 septembre 2016.

10.    La mort de G.S. a été provoquée par l'ingestion de la drogue illicite U-47700.

PLAINTE 2

1480538.3

Procès 2:18 Cause civile -- 00712-DB Document 2 Déposé 07/09/18 Page 3 de 11

11.    En Chine, de nombreux laboratoires fabriquent et vendent U-47700 en utilisant un brevet obtenu par son créateur, Jacob Szmuszkovicz.

12.    Si U-47700 est fabriqué selon les spécifications exactes de son brevet accessible au public, il est prétendu que c'est sept fois et demi plus fort que la morphine.

13.    De 2014 à juillet 2017, le site Web d'AlphaBay était le plus grand marché Dark Web commercialisant les substances contrôlées et les drogues illicites, y compris les substances et drogues fabriquées en Chine.

14.    Le site Web d'AlphaBay fournissait l'anonymat à ses utilisateurs engagés dans le commerce illicite en n'étant accessible qu'au travers du réseau d'ordinateurs de The Onion Router (« TOR »).

15.    TOR effectuait des opérations commerciales en utilisant seulement des crypto-monnaies ou des monnaies numériques et des adresses IP masquées. Les crypto-monnaies telles que Bitcoin, Monero et Ethereum fonctionnent entièrement sur un réseau  décentralisé entre homologues, n'existent pas sous forme physique et sont conçues pour être anonymes. Les paiements en crypto-monnaie sont inscrits dans un registre public tenu pour vérification par les homologues, connu sous le nom de « Blockchain ».

16.    En vertu de renseignements et de croyance, peu avant la mort de G.S., deux de ses amis, enfants mineurs C.S. et J.A., ont acheté du U-4770 de Chine en utilisant AlphaBay.

17.    Si l'on se base sur les  renseignements et la conviction, au moment où C.S. et J.A. ont acheté du U-4470, il ne figurait pas à l'annexe I en tant que substance réglementée par le Drug Enforcement Administration des États-Unis (« DEA »).

18.    Fin 2016, le DEA a inscrit U-47700 à l'annexe I en tant que substance réglementée, rendant illégaux la fabrication, l'achat, la distribution ou la possession de U-47700.

19.    Au moment où C.S. et J.A ont acheté U-47700 de Chine, il figurait, ou aurait dû figurer

sur l'annexe I en tant que substance réglementée puisque c'était beaucoup plus fort que la morphine et avait causé de nombreux décès en 2016.

20.     Les fabricants chinois distribuent U-47700 aux États-Unis de la même façon que d'autres produits à base de fentanyl. Le sénat des États-Unis a récemment étudié la distribution de fentanyl illicite. *U.S. Senate Committee on Homeland Security and Governmental Affairs, Combatting the Opioid Crisis: Exploiting the Vulnerabilities in International Mail.*

21.     U-47700 est un pseudonyme chimique pour un produit à base de fentanyl. *Id.* at 31.

22.     Selon le DEA, la Chine est la principale source d'approvisionnement en fentanyl et les clients peuvent l'acheter en ligne auprès de laboratoires chinois (les « Vendeurs ») qui expédient la marchandise par la poste. *Id.* at 1.

23.     Les Vendeurs préfèrent être payés par crypto-monnaies telles que Bitcoin, car elles offrent un certain niveau d'anonymat. *Id.* at 2.

24.     Pour les vendeurs en ligne, EMS, un service de livraison international par le biais des services postaux de chaque pays membre est le mode d'expédition préféré des produits à base de fentanyl. *Id.*

25.     Les États-Unis sont membres du traité de 1874 qui a créé l'Union postale universelle. En tant que membre, les États-Unis ont choisi USPS en tant qu'opérateur obligé d'accepter les colis en provenance de Chine au travers du réseau international d'EMS. *Id.* at 5. Plus précisément, lorsque des colis sont expédiés par China Post vers les États-Unis, ils passent par un centre de service international dans l'un de cinq aéroports des États-Unis et sont livrés par USPS. *Id.* at 3–5.

26.     Après les attaques terroristes du 11 septembre, le Trade Act de 2002 exigeait que les opérateurs d'envois express (« ECOs »), y compris Fedex et USPS, recueillent des renseignements sur la sécurité de tous les colis expédiés par l'intermédiaire de leurs réseaux. *Id.* at 6.

27.     Contrairement aux ECOs, USPS compte sur les opérateurs de services postaux étrangers pour recueillir les renseignements sur la sécurité des colis expédiés à l'étranger et livrés

Procès 2:18 Cause civile – 00712-DB Document 2 Déposé 07/09/18 Page 5 de 11

par USPS au niveau national. *Id.* at 7.

28.    En raison des exigences en matière de collecte d'information sur la sécurité pour les ECOs, tous vendeurs internationaux de fentanyl en ligne préfèrent éviter la détection de leurs expéditions de fentanyl en expédiant leurs achats par l'entremise de EMS. *Id.* at 8.

29.    Avant la mort de G.S, China Post, EMS et USPS savaient que les vendeurs en ligne chinois expédiaient aux Américains des produits à base de fentanyl en utilisant leurs services.

30.    Pour les vendeurs en ligne de fentanyl en Chine, les services de transport fournis par China Post, EMS et USPS étaient essentiels et incontournables afin de distribuer U-47700 aux États-Unis.

31.    En vertu de renseignements et de convictions,, à 13h46 le 26 août 2016, USPS a livré l'U-47700 qui a tué G.S.

32.    Pour éviter que les services de police ne les reconnaissent en tant que vendeurs internationaux de produits à base de fentanyl, les Vendeurs vendaient le fentanyl uniquement sur le Dark Web en acceptant les paiements en crypto-monnaies et expédiaient leurs produits à base de fentanyl par EMS.

33.    Au moment où les Défendeurs ont expédié, commercialisé, distribué, vendu et/ou transporté l'U-47700 à C.S. et J.A., ils savaient ou auraient dû savoir, que des enfants mineurs achetaient U-47700.

34.    Au moment où les Défendeurs ont expédié, commercialisé, distribué, vendu et/ou transporté l'U-47700 à C.S. et J.A., ils savaient que c'était ou aurait dû être une substance réglementée à l'annexe I.

35.    Au moment où les Défendeurs ont expédié, commercialisé, distribué, vendu et/ou transporté l'U-47700 à C.S. et J.A., ils savaient que c'était beaucoup plus fort que la morphine et qu'il avait causé de nombreux décès en 2016.

36.    Au moment où les Défendeurs ont expédié, commercialisé, distribué, vendu et/ou

transporté l'U-47700 à C.S. et J.A., ils savaient que l'U-47700 était excessivement dangereux au point que l'ingestion de pratiquement n'importe quelle quantité pouvait causer la mort.

## PREMIER MOTIF DE L'ACTION : RESPONSABILITÉ ABSOLUE

37.  Les demandeurs incorporent par renvoi les allégations précédentes comme si pleinement énoncées dans les présentes.

38.  Les défendeurs exerçaient des activités de commercialisation, de distribution, de vente, d'expédition et de transport d'U-47700, et ont commercialisé, distribué, expédié, transporté et vendu U-47700 (également connu sous le nom de « Pink » ou « Pinky »).

39.  U-47700 a été commercialisé sous des conditions déraisonnablement dangereuses pour le public et la catégorie de personnes dont les Demandeurs et G.S. faisaient partie.

40.  Les Défendeurs avaient chacun le devoir de mettre sur le marché des produits sûrs, notamment en commercialisant, distribuant, vendant, expédiant et transportant du U-47700 qui n'était pas excessivement dangereux lorsqu'il était utilisé aux fins prévues ou voulues et pour tous les usages prévisibles.

41.  Les Défendeurs savaient ou s'attendaient à ce que le U-47700 qu'ils avaient mis sur le marché par la commercialisation, la distribution, la vente, l'expédition et le transport, était promu pour parvenir, et est effectivement parvenu dans les mains des utilisateurs et consommateurs de l'État de l'Utah sans changement dans son état depuis sa conception et sa fabrication jusqu'à sa vente et son expédition ou transport.

42.  Au moment où U-47700 a fait son entrée sur le marché, il était excessivement dangereux. U-47700 était excessivement dangereux pour de nombreuses raisons y compris, mais sans s'y limiter, les suivantes :

    a.   U-47700 était excessivement dangereux lorsqu'il était utilisé comme prévu ou voulu ;

    b.   U-47700 a été conçu pour être excessivement dangereux

    c.   U-47700 a été fabriqué pour être excessivement dangereux ;

Procès 2:18 Cause civile – 00712-DB Document 2 Déposé 07/09/18 Page 7 de 11

    d.    U-47700 n'a pas été suffisamment testé ;

    e.    U-47700 n'a pas été étiqueté comme étant un produit excessivement dangereux :

    f.    U-47700 n'a pas été commercialisé comme étant un produit excessivement dangereux :

    g.    U-47700 a été distribué, sachant que c'était excessivement dangereux ;

    h.    U-47700 a été vendu, sachant que c'était excessivement dangereux ;

    i.    U-47700 a été expédié et transporté, sachant que c'était excessivement dangereux ;

43.    Lorsque le U-47700 était utilisé à des fins raisonnablement prévisibles aux Défendeurs, une personne ordinaire et raisonnable ne s'attendait pas à son risque élevé de causer la mort.

44.    Les Défendeurs savaient ou auraient dû savoir que des personnes telles que les plaignants et G.S. qui consommaient ou ingéraient du U-47700 même en petites quantités couraient un risque de décès élevé, mais ils n'ont pas étiqueté ou averti ces personnes de ces risques.

45.    Au moment où les Défendeurs ont mis U-47700 sur le marché il était excessivement dangereux.

46.    On s'attendait à ce que U-47700 parvienne à l'utilisateur final sans modification substantielle de l'état dans lequel il était mis sur le marché.

47.    Les Défendeurs connaissaient, ou auraient raisonnablement dû connaitre, le danger excessif que pose l'utilisation et la distribution d'U-47700.

48.    L'état excessivement dangereux d'U-47700 et l'absence de mises en garde suffisantes contre son risque de mort élevé furent la cause directe et immédiate de la mort de G.S., fils mineur des Demandeurs.

49.    En outre, l'état excessivement dangereux d'U-47700 était le résultat d'une conduite délibérée et malveillante ou intentionnellement frauduleuse, ou d'une conduite témoignant d'une

indifférence et d'un mépris insouciants envers les droits et la sécurité des autres, comme sera démontré au procès par une preuve claire et convaincante. Par conséquent,e, conformément à l'annexe du code de l'Utah, § 78B-8-201, les Demandeurs ont droit à des dommages-intérêts punitifs.

### DEUXIÈME MOTIF DE L'ACTION : NÉGLIGENCE / NÉGLIGENCE GRAVE

50.     Les Demandeurs incorporent par renvoi les allégations précédentes comme si pleinement énoncées dans les présentes.

51.     À tous moments pertinents, les Défendeurs avaient le devoir de mettre sur le marché des produits sûrs, notamment en commercialisant, distribuant, vendant, expédiant et transportant du U-47700 qui n'était pas excessivement dangereux lorsqu'il était utilisé aux fins prévues ou voulues et pour tous les usages prévisibles.

52.     Les Défendeurs ont négligemment placé U-47700 sur le marché et n'ont pas fourni de mises en garde suffisantes concernant les dangers excessifs et le risque élevé de décès liés au U-4700, lorsqu'il était utilisé comme prévu ou voulu, entraînant la mort de G.S.

53.     Les Défendeurs avaient un devoir envers chaque consommateur d'empêcher l'entrée d'U-47700 sur le marché, particulièrement aux mineurs comme G.S.

54.     Les Défendeurs savaient ou avaient des raisons de savoir que les Demandeurs et G.S., faisant partie du grand public, ne connaissaient pas le risque de décès élevé de par U-4700, comme il est décrit dans cette plainte.

55.     Les Défendeurs n'ont pas fait preuve de diligence raisonnable en mettant U-4700 sur le marché et la négligence et la négligence grave des Défendeurs sont une cause directe et immédiate de la mort de G.S.

56.     En outre, la conduite des Défendeurs témoigne d'une indifférence et d'un mépris insouciants envers les droits et la sécurité des autres, comme sera démontré au procès par une

preuve claire et convaincante. En conséquence, conformément au § 78B-8-201, les Demandeurs ont droit à des dommages-intérêts punitifs pour cause de négligence grave des Défendeurs.

### TROISIÈME MOTIF DE L'ACTION : ACTIVITÉ ANORMALEMENT DANGEREUSE

57.    Les Demandeurs incorporent par renvoi les allégations précédentes comme si pleinement énoncées dans les présentes.

58.    Comme décrit dans cette plainte, les actions et activités des Défendeurs étaient anormalement dangereuses.

59.    Les Défendeurs savaient que la mise sur le marché de U-47700 créait un risque de décès élevé pour G.S. et les autres enfants mineurs.

60.    Puisque les actions et activités des Défendeurs étaient anormalement dangereuses, ils sont responsables de la mort de G.S., qu'ils aient ou non exercé une diligence raisonnable.

### QUATRIÈME MOTIF DE L'ACTION : CONSPIRATION CIVILE

61.    Les Demandeurs incorporent par renvoi les allégations précédentes comme si pleinement énoncées dans les présentes.

62.    Comme décrit dans cette plainte, la conception, fabrication, distribution, l'expédition et le transport des produits dangereux en cause dans ce litige nécessite une combinaison de deux personnes ou plus. Les Défendeurs dans cette action sont membres de cette combinaison.

63.    Les Défendeurs partagent un objectif à atteindre : la conception, fabrication, distribution, l'expédition et le transport d'U-47700 et d'autres produits semblables, qui enrichissent les membres de la combinaison.

64.    Les Défendeurs se sont entendus sur leur objectif ou ligne de conduite.

65.    En cherchant à accomplir leur objet commun, les Défendeurs ont commis un ou plusieurs actes illégaux et manifestes.

66.    Les Demandeurs ont subi des dommages-intérêts en conséquence directe et immédiate des actes illégaux et manifestes commis par les Défendeurs dans le but de réaliser leur objectif

PLAINTE

commun.

## DOMMAGES

67.    En tant que conséquence directe et immédiate des actes, activités et autres actions répréhensibles commis par les Défendeurs, les Demandeurs ont subi des dommages-intérêts supérieurs à 10 millions de dollars, y compris, sans s'y limiter, les suivants :

    a.    Dommages généraux d'un montant raisonnable pour la mort injustifiée de G.S.;

    b.    Tous dommages-intérêts pour la mort injustifiée de G.S. ;

    c.    Dommages-intérêts de survie pour G.S. ;

    d.    Dommages-intérêts spéciaux pour G.S. ;

    e.    La perte de soins, de confort et de société de G.S. ;

    f.    Dommages-intérêts pour la détresse émotionnelle ;

    g.    Dommages-intérêts spéciaux d'un montant raisonnable pour les frais médicaux, funéraires, de crémation et autres frais connexes encourus ;

    h.    Autres dommages-intérêts spéciaux dans la mesure permise par la loi ;

    i.    Intérêts avant et après le jugement, dans la mesure permise par la loi ;

    j.    Frais, dépenses et honoraires d'avocat dans la mesure permise par la loi ;

    k.    Dommages-intérêts punitifs et exemplaires ;

    l.    Instruction négative du jury selon la spoliation de la preuve ;

    m.    Tout dommage mesurable résultant de la spoliation de la preuve ;

    n.    Toute réparation supplémentaire jugée juste et appropriée selon les circonstances.

68.    La négligence et l'insouciance des Défendeurs étaient si grossièrement négligentes et coupables que de tels actes et omissions ont constitué une inconscience et un mépris total de la vie et de la sécurité des autres et, spécifiquement, le mépris total de la vie et de la sécurité des plaignants et de G.S.

Procès 2:18 Cause civile – 00712-DB Document 2 Déposé 07/09/18 Page 11 de

69.    Les Défendeurs ont imprudemment négligé les faits et les circonstances, créant un risque déraisonnable de préjudice aux Demandeurs et à G.S. ; et ils ont délibérément agi sans égard ou dans l'indifférence du risque, ou en faisant preuve d'insouciance ou d'indifférence à l'égard du risque.

70.    En raison de la négligence et négligence grave et de la conduite imprudente, délibérée et injustifiée des Défendeurs, les Demandeurs ont droit à des dommages-intérêts exemplaires et punitifs.

71.    Des dommages-intérêts punitifs et des dommages-intérêts exemplaires sont justifiés dans le cadre de cette action à titre de punition des Défendeurs pour des actes imprudents et délibérés et à titre de force de dissuasion pour les Défendeurs et autres individus de commettre des actions identiques ou similaires qui mettent ainsi en danger la sécurité générale du public.

72.    En conséquence directe et immédiate des actions et omissions des Défendeurs présumés dans les présentes, y compris, mais sans s'y limiter la négligence et négligence grave et la conduite imprudente, délibérée et injustifiée des Défendeurs, les Demandeurs ont droit à des dommages-intérêts exemplaires et punitifs.

## PAR CES MOTIFS

**PAR CONSÉQUENT**, les Demandeurs demandent un jugement contre les Défendeurs comme suit :

73.    En conséquence directe et immédiate des actions, activités et autres actes répréhensibles des Défendeurs, G.S. a été tué. En conséquence, les Demandeurs, en tant que parents et héritiers suite au décès injustifié et représentants légaux de G.S., ont subi des dommages. Dans cette affaire, les Demandeurs ont le droit de recouvrer les dommages-intérêts suivants, d'un montant supérieur à 10 millions de dollars, dont les montants devront être prouvés au procès :

      a.    Perte de soins, de protection, de compagnie, d'association, de conseils et de société ;

Procès 2:18 Cause civile – 00712-DB Document 2 Déposé 07/09/18 Page 12 de

 

b.     Perte de soutien et de contributions émotionnels ;

c.     Perte de la valeur hédonistique de la vie de G.S. ;

d.     Dommages-intérêts punitifs ou exemplaires ;

e.     Pour les intérêts avant et après jugement

f.     Pour les frais de poursuite prévus aux présentes ; et

g.     Pour toute autre réparation que la Cour jugera juste et appropriée.

## DEMANDE DE PROCÈS AVEC JURY

Les Demandeurs exigent qu'un jury juge toutes les questions et allégations ci-dessus.

DATÉ du 7 septembre 2018.

JONES WALDO HOLBROOK & McDONOUGH, P.C.

*/s/ J. Angus Edwards*_____
Jeffrey D. Gooch
J. Angus Edwards
Avocats des Demandeurs

 **Morningside** Translations

450 Seventh Ave.
Tenth Floor
New York, NY 10123
(212) 643-8800

## TRANSLATION CERTIFICATION

Date: September 20, 2018

To whom it may concern:

This is to certify that the attached translation from English into German is an accurate representation of the document received by this office.

The document is designated as:
- 02 Complaint.pdf

Emily Sanders, Project Manager in this company, attests to the following:

"To the best of my knowledge, the aforementioned document is a true, full and accurate translation of the specified document."

*CCSANDERS*

_____
Signature of Emily Sanders

**Global Solutions. Local Expertise.**

www.morningtrans.com | info@morningtrans.com

JEFFREY D. GOOCH (7863)
J. ANGUS EDWARDS (4563)
**JONES WALDO HOLBROOK & MCDONOUGH, P.C.**
170 South Main Street, Suite 1500
Salt Lake City, Utah 84101
Tel.: +1 (801) 521 -3200
jgooch@joneswaldo.com
aedwards@joneswaldo.com

*Rechtsanwälte der Kläger*

**IM BUNDESBEZIRKSGERICHT**

**FÜR DEN BEZIRK UTAH**

**ZENTRALKAMMER**

| | |
|---|---|
| JAMES SEAVER und DEBORAH SEAVER, als Eltern und Erben des verstorbenen G.S.<br><br>      Kläger,<br><br>gegen<br><br>Den NACHLASS des verstorbenen ALEXANDRE CAZES, eines kanadischen Staatsangehörigen, der früher als ALPHABAY; THE TOR PROJECT, INC. aka THE ONION ROUTER, einer Nonprofit-Organisation aus Massachussetts; CHINA POSTAL EXPRESS & LOGISTICS COMPANY aka CHINA POST aka CHINA COURIER SERVICES CORPORATION, ein chinesisches Unternehmen oder eine staatliche Behörde; und EMS COOPERATIVE dba EXPRESS MAIL SERVICE, eine ausländische Tochtergesellschaft, Geschäfte machte.<br><br>      Beklagte. | **KLAGE** (SCHWURGERICHTSVERFAHREN GEFORDERT)<br><br><br>Rechtssache Nr.<br><br>Richter: |

      NUN KOMMEN die Kläger, vertreten durch Jeffrey D. Gooch of Jones Waldo und erheben hiermit Klage gegen die Beschuldigten und erheben folgende Anschuldigungen:

**I. PARTEIEN**

      1.    Die Kläger James und Deborah Seaver sind wohnhaft im Summit County, Utah und sind die Eltern und Erben des verstorbenen Geschäftsführers.

1480538.3

2.	Die beklagte Partei AlphaBay ist eine ausländische Tochtergesellschaft, die 2014 von einem kanadischen Staatsbürger namens Alexandre Cazes mit Hauptgeschäftssitz in Thailand gegründet wurde, bis sich Herr Cazes im Juli 2017 das Leben nahm. Vor der Betriebseinstellung im Juli 2017 tätigte AlphaBay Geschäfte mit dem US-Bundesstaat Utah durch den Verkauf von Produkten in einem Handelsstrom, der im Summit County in Utah mündete.

3.	Die beklagte Partei The Tor Project, Inc. aka The Onion Router („TOR„) ist ein Unternehmen aus Massachusetts mit Hautpgeschäftssitz in Norton, Massachusetts.

4.	Die beklagte Partei China Post Group Corporation (中国邮政集团公司) aka China Post aka China Postal Express & Logistics Company aka China Courier Services Corporation hat ihren Hauptgeschäftssitz in Beijing, China, und befindet sich möglicherweise teilweise oder ganz im Eigentum der chinesischen Regierung.

5.	Die beklagte Partei EMS Cooperative dba Express Mail Service („EMS„) ist eine ausländische Körperschaft, die globale Lieferdienste anbietet. EMS verwendet eine Postanschrift in Bern, in der Schweiz.

## II.  GERICHTSBARKEIT UND GERICHTSSTAND

6.	Der Streitwet in dieser Sache übersteigt $75.000 zuzüglich Zinsen und sonstige Kosten.

7.	Dieses Gericht ist in erster Instanz zuständig gemäß 28 U.S.C. §1332(a)(2).

8.	Alle beklagten Unternehmen haben Geschäftsverträge im US-Bundesstaat Utah, einschließlich durch ihre Vertriebspartner, aufgrund des Vertriebs ihrer Produkte oder der Lieferung dieser Produkte in den US-Bundesstaat Utah, die im US-Bundesstaat Utah Anwendung finden.

## III.  SACHVERHALT, DER ALLEN KLAGEGRÜNDEN ZUGRUNDELIEGT

9.	Diese Klage ist das Ergebnis des Todes von G.S, einem dreizehnjährigen Jungen, am 11. September 2016.

Case 2:18-cv-00712-DB-DBP   Document 21   Filed 03/14/19   Page 38 of 49

10.    G.S. Tod wurde durch die Einnahme der illegalen Droge U-47700 verursacht.

11.    Zahlreiche Drogenlabore in China produzieren und verkaufen U-47700 und nutzen dazu ein Patent, das der Erfinder von U-47700, Jacob Szmuszkovicz erhalten hat.

12.    Wenn U-47700 nach den genauen Vorgaben seines öffentlich zugänglichen Patents hergestellt wird, ist es angeblich siebeneinhalb Mal mehr stark als Morphin.

13.    Von 2014 bis Juli 2017 war die Website von AlphaBay der größte Darknet-Markt, auf dem kontrollierte Substanzen und illegale Drogen, einschließlich in China hergestellte Stoffe und Drogen, gehandelt wurden.

14.    Die Website von AlphaBay bot ihren am illegalen Handel beteiligten Nutzern Anonymität, indem sie nur durch das Computernetzwerk The Onion Router („TOR„) zugänglich war.

15.    Im TOR erfolgte die Geschäftsabwicklung nur unter Einsatz von Kryptowährungen oder digitalen Währungen und verdeckten IP-Adressen. Kryptowährungen wie Bitcoin, Monero und Ethereum funktionieren ausschließlich in einem dezentralen Peer-to-Peer-Netzwerk, existieren nicht in physischer Form und sind anonym gestaltet. Zahlungen in Kryptowährungen werden in einem öffentlichen Hauptbuch eingetragen, das durch Peer-to-Peer-Verifikation gepflegt wird, bekannt als die „Blockchain".

16.    Nach bestem Wissen und Gewissen haben kurz vor dem Tod von G.S. zwei seiner Freunde, die Minderjährigen C.S. und J.A. U-4770 aus China über AlphaBay erworben.

17.    Nach bestem Wissen und Gewissen war es zu dem Zeitpunkt, als C.S. und J.A. sich U-47700 beschafften, nicht als von der US-Anti-Drogen-Behörde („DEA„) kontrollierte Substanz der Klasse I aufgelistet.

18.    Im späteren Verlauf des Jahres 2016 führte die DEA U-47700 als kontrollierte Substanz der Klasse I auf, womit die Herstellung, der Erwerb, Vertrieb oder Besitz von U-47700 illegal wurde.

KLAGE

3

19.    Zu dem Zeitpunkt, als C.S. und J.A. U-47700 aus China erwarben, war es oder hätte es auf der Liste der Klasse I der kontrollierten Substanzen stehen sollen, da es viel stärker als Morphin war und im Jahr 2016 zu zahlreichen Todesfällen führte.

20.    Chinesische Hersteller vertreiben U-47700 in den Vereinigten Staaten mit derselben Methode wie andere Fentanyl-Produkte. Der US-Senat hat vor kurzem den Vertrieb von illegalem Fentanyl untersucht. *Der US-Senatsausschuss für Heimatschutz und Regierungsangelegenheiten im Kampf gegen die Opioid-Krise: Die Erschließung der Schwachstellen im Internationalen Schriftverkehr.*

21.    U-47700 ist ein chemisches Pseudonym für ein Fentanyl-Produkt. *Id.* Punkt 31.

22.    Laut DEA ist China die Hauptbezugsquelle für Fentanyl und Kunden können es aus chinesischen Labors online erwerben (die „Verkäufer") und per Post zuschicken lassen. *Id.* 1.

23.    Die Käufer ziehen eine Zahlung mit Kryptowährungen wie Bitcoins vor, die es dem Kunden erlauben, bis zu einem gewissen Grad anonym zu bleiben. *Id.* 2.

24.    Die von den Online-Verkäufern bevorzugte Versandmethode für Fentanyl-Produkte ist EMS, ein globaler Lieferdienst durch den Postbetrieb jedes Mitgliedslands. *Id.*

25.    Die USA sind ein Mitglied des Gründungsvertrags des Weltpostverbands. Als Mitglied haben die USA die USPS als Betreiber bestimmt, der dazu verpflichtet ist, Pakete aus China über das globale EMS-Netzwerk anzunehmen. *Id.* 5. Speziell, wenn Pakete von China Post in die USA versandt werden, durchlaufen sie ein internationales Servicezentrum an einem von fünf Flughäfen in den USA und werden von der USPS zugestellt. *Id.* 3-5.

26.    Nach den Terroranschlägen vom 11. September waren Express-Versandbetreiber („EVB"), einschließlich FedEx und UPS nach dem Handelsgesetz (Trade Act) von 2002 zur Erfassung von sicherheitsrelevanten Informationen zu allen über ihre Netzwerke versandten Pakete verpflichtet. *Id.* 6.

27.    Anders als die EVB ist die USPS bei der Erfassung von Sicherheitsinformationen

KLAGE
4

zu international versandten Paketen, die USPS im Inland zustellt, auf ausländische Postdienstleister angewiesen. *Id.* 7.

28.    Aufgrund der Verpflichtung der EVB zur Erfassung von Sicherheitsdaten, vermeiden alle internationalen Onlineverkäufer lieber die Aufdeckung ihrer Fentanyl-Sendungen, indem sie ihre Einkäufe über EMS versenden. *Id.* 8.

29.    Vor dem Tod von G.S. war es China Post, EMS und USPS bekannt, dass chinesische Onlineverkäufer Fentanyl-Produkte an Amerikaner versenden, die ihre Dienste nutzen.

30.    Die von China Post, EMS und USPS angebotenen Versanddienste waren für die Onlineverkäufer von Fentanyl in China wesentlicher und unverzichtbarer Bestandteil des Vertriebs von U-47700 in den USA.

31.    Nach bestem Wissen und Gewissen lieferte die USPS am 26. August 2016 um 1:46 Uhr das für G.S. tödliche U-47700.

32.    Um ihre Aufdeckung als internationale Verkäufer von Fentanyl-Produkten durch die Vollstreckungsbehörden zu vermeiden, handelten die Verkäufer Fentanyl nur im Darknet, indem sie die Zahlung in Kryptowährungen akzeptierten und ihre Fentanyl-Produkte über EMS versandten.

33.    Zu dem Zeitpunkt, als die Beklagten das Rauschmittel U-47700 an C.S. und J.A. versandten, vermarkteten, vertrieben, verkauften und/oder beförderten, wussten sie oder hätten wissen müssen, dass minderjährige Kinder U-47700 kauften.

34.    Zu dem Zeitpunkt, als die Beklagten das Rauschmittel U-47700 an C.S. und J.A. versandten, vermarkteten, vertrieben, verkauften und/oder beförderten, wussten sie, dass es sich um eine Droge der Klasse I handelte oder handeln musste.

35.    Zu dem Zeitpunkt, als die Beklagten das Rauschmittel U-47700 an C.S. und J.A.

1480538.3

versandten, vermarkteten, vertrieben, verkauften und/oder beförderten, wussten sie, dass es um ein Vielfaches stärker war als Morphin und im Jahr 2016 zahlreiche Todesopfer gefordert hatte.

36.     Zu dem Zeitpunkt, als die Beklagten das Rauschmittel U-47700 an C.S. und J.A. versandten, vermarkteten, vertrieben, verkauften und/oder beförderten, wussten sie, dass U-47700 so unverhältnismäßig gefährlich ist, dass die Einnahme bereits kleinster Mengen zum Tod führen kann.

**ERSTER KLAGEGRUND: VERSCHULDENSUNABHÄNGIGE HAFTUNG**

37.     Die Kläger nehmen die vorstehenden Anschuldigungen durch Bezugnahme so in die Klage auf, als ob sie vollständig darin aufgeführt wären.

38.     Die Beklagten waren am Vermarktungs-, Vertriebs-, Verkaufs-, Versand- und Transportgeschäft von U-47700 beteiligt und vermarkteten, vertrieben, versandten, transportierten und verkauften U-4700 (auch bekannt als „Pink" or „Pinky").

39.     U-47700 wurde in einem für die Öffentlichkeit und die Verkehrskreise, denen Kläger und G.S. angehörten, unangemessen gefährlichen Zustand in den Handelsverkehr gebracht

40.     Jeder der Beklagten hatte die Pflicht, sichere Produkte in den Verkehr zu bringen, auch durch die Vermarktung, den Vertrieb, Verkauf, Versand und Transport von U-47700, das nicht unverhältnismäßig gefährlich war, wenn es zur bestimmungsgemäßen Verwendung und für alle vorhersehbaren Verwendungszwecke angeboten worden wäre.

41.     Die Beklagten wussten oder konnten davon ausgehen, dass das Mittel U-47700, das sie durch Vermarktung, Vertrieb, Verkauf, Versand und Transport in den Verkehr brachten,

Rechtssache 2:18-cv-00712-DB Dokument 2 Abgelegt am 09.07.18 Seite 7 von 13

beworben wurde, um Verbraucher und Konsumenten im US-Bundesstaat Utah zu erreichen und diese in der Tat auch in unverändertem Zustand erreichte von der Entwicklung und Herstellung über die Zeit, in der die Drogen verkauft und versandt oder transportiert wurden.

42.     Zu der Zeit, als U-47700 in den Verkehr gelangte, war es in einem unverhältnismäßig gefährlichen Zustand. U-47700 war aus zahlreichen Gründen unverhältnismäßig gefährlich, einschließlich, aber nicht beschränkt auf die folgenden Gründe:

a.     U-47700 war bei bestimmungsgemäßer Verwendung unverhältnismäßig gefährlich;

b.     U-47700 wurde zu einem unverhältnismäßig gefährlichen Produkt entwickelt;

c.     Mit U-47700 wurde ein unverhältnismäßig gefährliches Produkt hergestellt;

d.     U-47700 wurde nur unzureichend getestet;

e.     U-47700 wurde nicht als unverhältnismäßig gefährliches Produkt gekennzeichnet;

f.     U-47700 wurde nicht als unverhältnismäßig gefährliches Produkt vermarktet;

g.     U-47700 wurde ungeachtet des Wissens um seine unverhältnismäßige Gefährlichkeit vertrieben;

h.     U-47700 wurde ungeachtet des Wissens um seine unverhältnismäßige Gefährlichkeit verkauf;

i.     U-47700 wurde ungeachtet des Wissens um seine unverhältnismäßige Gefährlichkeit versandt und transportiert.

43.     Als U-47700 zu vernünftigerweise vorhersehbaren Zwecken verwendet wurde, stellte es ein hohes Todesfallrisiko dar, das ein einfacher vernünftiger Mensch nicht erwarten würde.

44.     Die Beklagten wussten oder hätten wissen müssen, dass für Menschen wie die

KLAGE
7

1480538.3

Kläger und G.S., die U-47700 konsumierten oder einnahmen selbst bei kleinen Mengen des Produkts ein hohes Todesfallrisiko bestand, haben es jedoch versäumt, das Produkt entsprechend zu kennzeichnen oder diese Personen auf das hohe Todesfallrisiko hinzuweisen.

45.    U-47700 war unverhältnismäßig gefährlich zu dem Zeitpunkt, als die Beklagten es in den Verkehr brachten.

46.    Es war davon auszugehen, dass U-47700 ohne wesentliche Änderung des Zustands, in dem es in den Verkehr gebracht wurde, den Endabnehmer erreichen würde und diesen auch tatsächlich erreichte.

47.    Die Beklagten wussten oder hätten vernünftigerweise um die unverhältnismäßige Gefahr wissen müssen, die vom Konsum und Vertrieb von U-47700 ausging.

48.    Der unverhältnismäßig gefährliche Zustand von U-47700 und das Versäumnis, das Produkt mit angemessenen Warnhinweisen zum hohen Sterblichkeitsrisiko zur versehen, waren die unmittelbare und naheliegende Ursache für den Tod des minderjährigen Sohns der Kläger G.S.

49.    Außerdem war der unverhältnismäßig gefährliche Zustand von U-47700 das Ergebnis eines vorsätzlich böswilligen oder vorsätzlich betrügerischen Verhaltens oder eines Verhaltens, das eine wissentliche und rücksichtslose Gleichgültigkeit und Missachtung der Rechte und  Sicherheit anderer offenbarte, was durch klare und überzeugende Beweise im Verfahren belegt wird. Dementsprechend haben Kläger gemäß §78-B-8-201 des kommentierten Gesetzes des Bundesstaats Utah Anspruch auf Strafschadenersatz.


## ZWITER KLAGEGRUND: NACHLÄSSIGKEIT /GROBE FAHRLÄSSIGKEIT

50.    Die Kläger nehmen die vorstehenden Anschuldigungen durch Bezugnahme so in die Klage auf, als ob sie vollständig darin aufgeführt wären.

51.    Zu jeder relevanten Zeit hatten die Beklagten die Pflicht, sichere Produkte in den

Verkehr zu bringen, auch durch die Vermarktung, den Vertrieb, Verkauf, Versand und Transport von U-47700, das nicht unverhältnismäßig gefährlich war, wenn es zur bestimmungsgemäßen Verwendung und für alle vorhersehbaren Verwendungszwecke angeboten worden wäre.

52.    Die Beklagten brachten U-47700 fahrlässig in den Verkehr und unterließen es, das Produkt mit angemessenen Warnhinweisen zu den unzumutbaren Gefahren und dem hohen Sterblichkeitsrisiko zu versehen, das bei bestimmungsgemäßem Gebrauch von U-47700 ausgeht und zum Tod von G.S. geführt hat.

53.    Die Beklagten waren gegenüber jedem Konsumenten verpflichtet, zu verhindern, dass U-4700 in den Verkehr gelangt, insbesondere in die Hände von Minderjährigen wie G.S.

54.    Die Beklagten wussten oder hatten Grund zur Annahme, dass die Kläger und G.S., als Mitglieder der breiten Öffentlichkeit nichts vom Sterblichkeitsrisiko, das von U-4700 ausgeht, gehört hatten, wie in dieser Klageschrift beschrieben.

55.    Die Beklagten versäumten es, mit der gebotenen Sorgfalt vorzugehen, als sie U-4700 in den Verkehr brachten und die Nachlässigkeit und grobe Fahrlässigkeit der Beklagten war eine direkte und unmittelbare Ursache für den Tod von G.S.

56.    Außerdem offenbart sich im Verhalten der Beklagten eine wissentliche und rücksichtslose Gleichgültigkeit und Missachtung der Rechte anderer, wie im Prozess mit klaren und überzeugenden Beweisen belegt wird. Dementsprechend haben Kläger gemäß §78B-8-201 Anspruch auf Strafschadenersatz aufgrund der groben Fahrlässigkeit der Beklagten.

## DRITTER KLAGEGRUND: UNGEWÖHNLICH GEFÄHRLICHE TÄTIGKEIT

57.    Die Kläger nehmen die vorstehenden Anschuldigungen durch Bezugnahme so in die Klage auf, als ob sie vollständig darin aufgeführt wären.

58.    Wie in dieser Klageschrift beschrieben, waren die Handlungen und Tätigkeiten ungewöhnlich und gefährlich.

KLAGE

9

Rechtssache 2:18-cv-00712-DB Dokument 2 Abgelegt am 09.07.18 Seite 10 von 13

59.   Die Beklagten wussten, dass das Inverkehrbringen von U-47700 mit einem hohen Todesfallrisiko für G.S. und andere minderjährige Kinder verbunden war.

60.   Da die Handlungen und Aktivitäten der Beklagten ungewöhnlich gefährlich waren, haften sie für den Tod von G.S., unabhängig davon, ob sie mit angemessener Sorgfalt vorgingen oder nicht.

### VIERTER KLAGEGRUND: ZIVILRECHTLICHE VERSCHWÖRUNG

61.   Die Kläger nehmen die vorstehenden Anschuldigungen durch Bezugnahme so in die Klage auf, als ob sie vollständig darin aufgeführt wären.

62.   Wie in dieser Klage beschrieben, bedarf es bei der Entwicklung, Herstellung, dem Vertrieb, Versand und Transport der gefährlichen Produkte, die Gegenstand dieses Rechtsstreits sind, einer Interessengemeinschaft von mindestens zwei Personen. Die Beklagten in dieser Klage sind Mitglieder dieser Interessengemeinschaft.

63.   Die Beklagten haben sich ein gemeinsames Ziel gesetzt, nämlich die Entwicklung, Herstellung, Vertrieb, Versand und Transport von U-47700 und ähnlicher Produkte, was die Mitglieder der Gemeinschaft bereichert.

64.   Die Beklagten erzielten eine Einigung in Bezug auf ihr Ziel oder ihre Vorgehensweise.

65.   Im Bestreben, dieses gemeinsame Ziel zu erreichen, haben die Beklagten eine oder mehrere offenkundige, rechtswidrige Handlungen begangen.

66.   Die Kläger haben als direkte und unmittelbare Folge der offenkundigen rechtswidrigen Handlungen, die von den Beklagten in dem Bestreben nach Verwirklichung ihres gemeinsamen Ziels begangen wurden, Schaden erlitten.

### SCHADENERSATZ

67.   Als direkte und unmittelbare Folge der Handlungen, Aktivitäten und sonstigen

1480538.3

Rechtssache 2:18-cv-00712-DB  Dokument 2  Abgelegt am 09.07.18  Seite 11 von 13

Fehlverhaltens der Beklagten, haben die Kläger einen Schaden von über 10 Millionen Dollar erlitten, einschließlich aber nicht beschränkt auf folgende Schäden:

    a.    Allgemeinen Schadenersatz aufgrund der rechtswidrigen Tötung von G.S. in angemessener Höhe;

    b.    Schadenersatz für den Tod von G.S. für sämtliche Schäden aufgrund der rechtswidrigen und schuldhaften Tötung von G.S;

    c.    Schadenersatz für G.S. aufgrund von Körperverletzung;

    d.    Schadenersatz für G.S. aufgrund von Vermögensschäden;

    e.    Schadenersatz für den Verlust von Fürsorge, Trost und Gesellschaft von G.S.;

    f.    Schadenersatz für seelisches Leid;

    g.    Finanzieller Schadenersatz für Behandlungs-, Bestattungs-, Feuerbestattungs- und sonstige entstandene Aufwendungen in angemessener Höhe;

    h.    Sonstiger finanzieller Schadenersatz in gesetzlich zulässigem Rahmen;

    i.    Vor- und nachprozessuale Zinsen, im gesetzlich zulässigen Rahmen;

    j.    Kosten, Ausgaben und Anwaltsgebühren im gesetzlich zulässigen Rahmen;

    k.    Strafschadenersatz oder Schadenersatz mit abschreckender Wirkung;

    l.    Negative Anweisungen an die Jury aufgrund der Vernichtung von Beweismitteln;

    m.    Bezifferbare Schäden, die aus der Vernichtung von Beweismitteln entstanden sind; und

    n.    Weitere Entschädigungen, die unter diesen Umständen als gerecht und angemessen erachtet werden können.

68.    Die Fahrlässigkeit und Unachtsamkeit der Beklagten waren so grob fahrlässig und schuldhaft, dass diese Handlungen und Versäumnisse Rücksichtslosigkeit und Mutwilligkeit darstellen unter völliger Missachtung des Lebens und der Sicherheit anderer und besonders

KLAGE

11

unter völliger Missachtung des Lebens und der Sicherheit der Kläger und von G.S.

69.　Die Beklagten missachteten leichtfertig Tatsachen und Umstände, die für die Kläger und G.S. eine unangemessene Gefährdung darstellten und handelten vorsätzlich unter bewusster Missachtung oder Gleichgültigkeit gegenüber dem Risiko oder handelten fahrlässig unter unangemessener Missachtung oder Gleichgültigkeit gegenüber dem Risiko.

70.　Infolge der Fahrlässigkeit und der groben Fahrlässigkeit und des rücksichtslosen, vorsätzlichen und mutwilligen Verhaltens der Beklagten, haben die Kläger Anspruch auf Schadenersatz mit abschreckender Wirkung und Strafschadenersatz.

71.　Strafschadenersatz und Schadenersatz mit abschreckender Wirkung werden in dieser Klage zugesprochen als Strafe der Beklagten für rücksichtsloses und mutwilliges Handeln und zur Abschreckung der Beklagten und anderer Personen, solche oder ähnliche Handlungen zu begehen, welche die allgemeine öffentliche Sicherheit gefährden.

72.　Als direkte und unmittelbare Folge der Handlungen und Versäumnisse der Beklagten wie hierin angeführt, einschließlich, aber nicht beschränkt auf die Fahrlässigkeit, grobe Fahrlässigkeit, rücksichtsloses, vorsätzliches und mutwilliges Verhalten haben die Kläger Anspruch auf Schadenersatz für konkrete Schäden, Schadenersatz mit abschreckender Wirkung und Strafschadenersatz.

## KLAGEBEGEHREN

WESHALB, die Kläger um folgendes Urteil gegen die Beklagten bitten:

73.　Als direkte und unmittelbare Folge der Handlungen, Aktivitäten und des sonstigen Fehlverhaltens der Beklagten wurde G.S. getötet. Dementsprechend wurden die Kläger als Eltern und gesetzliche Erben aufgrund rechtswidriger Tötung und als Vertreter von G.S.

1480538.3

Rechtssache 2:18-cv-00712-DB Dokument 2 Abgelegt am 09.07.18 Seite 13 von 13

entschädigt. Die Kläger haben Anspruch auf Schadenersatz von über 10 Mio. Dollar für folgende Schäden in dieser Sache, deren Höhe im Verfahren nachzuweisen ist:

      a.    Verlust von Fürsorge, Schutz, Gemeinschaft, Verbindung, Beratung und Gesellschaft;

      b.    Verlust emotionaler Unterstützung und emotionaler Beteiligung;

      c.    Verlust des hedonischen Werts von G.S. Leben;

      d.    Strafschadenersatz oder Schadenersatz mit abschreckender Wirkung;

      e.    Für vor- und nachprozessuale Zinsen;

      f.    Für die hier entstandenen Kosten der Klage;

      g.    Für weitere Entschädigungen, die das Gericht als gerecht und angemessen erachtet.

## FORDERUNG EINES SCHWURGERICHTSVERFAHRENS

Die Kläger fordern, dass ein Schwurgericht über die oben genannten Fragen und Anschuldigungen entscheidet.

am heutigen 7. September 2018.

JONES WALDO HOLBROOK & MCDONOUGH, P.C.

/s/    J.    Angus    Edwards

Jeffrey D. Gooch
J. Angus Edwards
Rechtsanwälte der Kläger

KLAGE
13

1480538.3



UNION
POSTALE
UNIVERSELLE

3000 BERNE 15
SUISSE

08.03.19    15.0
CH - 3000          PRIORI
Bern 15            Gross 2

2021649             LA POST

**PRIORITAIRE**
Par avion  By Air Mail  Flugpost

 

CH-3000 Bern 15

RM 235 145 730 CH
Please scan - Signature required
Veuillez scanner - Remise contre Signature

Mr D Mark Jones
Clerk of Court
United States District Court for the District of Utah
351 South West Temple, Rm. 1.100
SALT LAKE CITY, UTAH 84101
UNITED STATES OF AMERICA

Form. BI 1.60.7 (3.98) 5000 – 2018